1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

SCOTT JOHNSON,

              Plaintiff,

      v.

AN KHANG MI GIA, a California corporation,

              Defendant.

Case No.  5:21-cv-01702-BLF

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

[Re:  ECF No. 14]

Plaintiff Scott Johnson brings this action against Defendant An Khang Mi Gia, a California corporation, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the California Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51–53. *See* Compl., ECF No. 1.  Plaintiff, who is a level C-5 paraplegic, alleges that Defendant's restaurant failed to provide wheelchair-accessible dining surfaces during Plaintiff's November 2020 visit.  Plaintiff seeks injunctive relief along with statutory damages, attorneys' fees, and costs.

Defendant never answered the Complaint or otherwise appeared in this matter.  At Plaintiff's request, this Court entered default against Defendant on April 23, 2021.  *See* Entry of Default, ECF No. 13; Mot. for Entry of Default, ECF No. 12.  Now before the Court is Plaintiff's Motion for Default Judgment ("Motion").  Mot., ECF No. 14-1.  Defendant was notified of Plaintiff's Motion on August 12, 2021.  *See* Proof of Service, ECF No. 14-13; *see also* Fed. R. Civ. P. 55(b)(2).  Defendant did not oppose or otherwise respond to the Motion.  The time for filing an opposition has passed.  *See* Civ. L.R. 7-3(a).  Pursuant to Civil Local Rule 7-1(b), the Court found this motion appropriate for determination without oral argument.  *See* Order Vacating Motion Hearing,

1    ECF No. 16.  For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Default

2    Judgment with the terms stated below.

3    **I.    BACKGROUND**

4          According to his Complaint, Plaintiff is a level C-5 quadriplegic.  Compl. ¶ 1.  Plaintiff has

5    significant manual dexterity impairments, cannot walk, uses a wheelchair for mobility, and has a

6    specially equipped van.  *Id*.  Defendant is the alleged owner of the restaurant An Khang Mi Gia (the

7    "Restaurant") located at 979 Story Rd., San Jose, California.  *Id*. ¶¶ 2–3.

8          Plaintiff alleges that barriers at the Restaurant prevented him from enjoying full and equal

9    access to the facility.  *Id*. ¶¶ 8–18.  Specifically, Plaintiff alleges that during a November 2020 visit,

10   he was unable to use and enjoy the Restaurant because it did not have wheelchair-accessible dining

11   surfaces.  *Id*. ¶¶ 8, 10–13.  Plaintiff alleges that the Restaurant's outdoor dining surfaces lacked

12   sufficient knee clearance for wheelchair users.  *Id*. ¶ 12.  Plaintiff further alleges that the Restaurant

13   "fail[ed] to provide wheelchair accessible dining surfaces."  *Id.* ¶¶ 10–11.  Plaintiff alleges that these

14   barriers "are easily removed without much difficulty or expense" and numerous alternative

15   accommodations could be made if complete removal were not achievable.  *Id*. ¶ 19.  Plaintiff claims

16   that he personally encountered these barriers while at the Restaurant and that Defendant's failure to

17   provide accessible dining surfaces "created difficulty and discomfort."  *Id.* ¶¶ 15, 17.  Plaintiff

18   claims that he will return to the Restaurant once he is informed that it is accessible.  *Id.* ¶ 20.

19   **II.    LEGAL STANDARD**

20          Default may be entered against a party who fails to plead or otherwise defend an action, and

21   against whom a judgment for affirmative relief is sought.  Fed. R. Civ. P. 55(a).

22          After entry of default, a court may, in its discretion, enter default judgment.

23   Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding

24   whether to enter default judgment, a court may consider the following factors, known as the *Eitel*

25   factors:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive

26   claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the

27   possibility of a dispute concerning material facts; (6) whether the default was due to excusable

28   neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions

United States District Court
Northern District of California

2

on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, a court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

### III.  JURISDICTION AND SERVICE OF PROCESS

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### A.  Subject Matter Jurisdiction

District courts have subject matter jurisdiction over all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. Further, in any civil action where the district courts have subject matter jurisdiction, the district courts will also have supplemental jurisdiction over all other claims that are intertwined with claims in the action, such that they form part of the same case or controversy. 28 U.S.C. § 1367. Plaintiff's claim for relief pursuant to the ADA constitutes a civil action arising under a law of the United States. Therefore, this Court has subject matter jurisdiction over Plaintiff's ADA claim. Moreover, Plaintiff's claim for relief pursuant to the Unruh Act is related to the ADA claim because it arises out of the "same case or controversy"—namely, Plaintiff's visit to the Restaurant where, he alleges, both laws were violated. *See* 28 U.S.C. § 1367(a). Therefore, the Court has supplemental jurisdiction over Plaintiff's Unruh Act claim.

#### B.  Personal Jurisdiction and Service of Process

Serving a summons establishes personal jurisdiction over a defendant, who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R. Civ. P. 4(k)(1). An individual defendant may be served by: (1) delivering a copy of the summons and complaint to the individual personally; (2) leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and

1    discretion who resides there; or (3) delivering a copy of the summons and complaint to an agent

2    authorized by appointment or law to receive service of process.  Fed. R. Civ. P. 4(e).  Under

3    California law, individual defendants may be served by several means, including personal delivery

4    of the summons and complaint to the individual or the individual's authorized agent.  Cal. Civ. Proc.

5    Code §§ 415.10, 416.90.

6          The record indicates that Plaintiff successfully served Defendant on March 18, 2021 via

7    personal service by delivering copies of the summons and complaint to Sa Le Thai as an authorized

8    agent for Defendant.  *See* Proof of Service of Summons, ECF No. 10.  As such, the Court is satisfied

9    that Plaintiff gave Defendant proper service of process under both the Federal Rules of Civil

10   Procedure and the California Code of Civil Procedure.   Therefore, the Court has personal

11   jurisdiction over Defendant.

12   **IV.    *EITEL* FACTORS**

13         For the reasons discussed below, this Court finds that the *Eitel* factors weigh in favor of

14   entering default judgment.

15         **A.    Possibility of Prejudice to Plaintiff**

16         The first *Eitel* factor requires the Court to consider whether Plaintiff would be prejudiced if

17   default judgment is not entered.  Unless default judgment is entered, Plaintiff will have no other

18   means of recourse against Defendant.  As such, Plaintiff will be prejudiced if default judgment is

19   not entered.  *See, e.g.*, *Ridola v. Chao*, No. 16–cv–02246–BLF, 2018 WL 2287668, at *5 (N.D. Cal.

20   May 18, 2018) (finding that plaintiff would be prejudiced if default judgment was not entered

21   because she "would have no other means of recourse against Defendants for the damages caused by

22   their conduct").

23         **B.    Merits of Plaintiff's Claims; Sufficiency of the Complaint**

24         Pursuant to the second and third *Eitel* factors, this Court concludes that the Complaint alleges

25   meritorious substantive claims for relief under the ADA and the Unruh Act.

26         **1.  Title III of the ADA, 42 U.S.C. § 12101, *et seq.***

27         Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis

28   of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

1   or accommodations of any place of public accommodation by any person who owns, leases (or

2   leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of

3   Title III, discrimination includes "a failure to remove architectural barriers ... in existing facilities

4   ... where such removal is readily achievable[.]" 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily

5   achievable" is defined as "easily accomplishable and able to be carried out without much difficulty

6   or expense." 42 U.S.C. § 12181(9).

### a.   Plaintiff's Article III Standing

7

8   Plaintiff must establish Article III standing, which requires that he demonstrate he suffered

9   an injury in fact, traceable to Defendant's conduct, and redressable by a favorable court decision.

10  *Ridola*, 2018 WL 2287668, at *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1162 (S.D.

11  Cal. 2006)). Plaintiff claims that he suffers from a disability within the meaning of the ADA.

12  Mot. at 7. Plaintiff also alleges that he personally encountered access barriers at the Restaurant

13  because the Restaurant lacked wheelchair-accessible dining tables. Compl. ¶¶ 10–12, 15. Further,

14  Plaintiff claims that he will return to the Restaurant once it is made accessible. *Id.* ¶ 20; *see Vogel*

15  *v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1008 (C.D. Cal. 2014) ("Demonstrating an intent to return to

16  a non-compliant accommodation is but one way for an injured plaintiff to establish Article III

17  standing to pursue injunctive relief.") (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939,

18  949 (9th Cir. 2011)).

19  Because Plaintiff's factual allegations are accepted as true, and an award of statutory

20  damages and injunctive relief would redress Plaintiff's alleged injuries caused by Defendant's

21  conduct, the Court finds that Plaintiff has Article III standing to sue under the ADA.

### b.   ADA Claim Elements

22

23  To prevail on his Title III discrimination claim, Plaintiff must show that (1) he is disabled

24  within the meaning of the ADA; (2) Defendant is a private entity that owns, leases, or operates a

25  place of public accommodation; and (3) Plaintiff was denied public accommodations by Defendant

26  because of his disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To

27  succeed on an ADA claim based on architectural barriers, Plaintiff "must also prove that: (1) the

28  existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of

United States District Court
Northern District of California

the barrier is readily achievable." *Ridola*, 2018 WL 2287668, at *5.

Plaintiff has plausibly pled an ADA claim.  First, Plaintiff has adequately alleged that he has a disability within the meaning of the ADA.  Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), (2)(A).  Plaintiff is a C-5 quadriplegic who cannot walk and uses a wheelchair for mobility.  Compl. ¶ 1.

Second, Plaintiff has adequately alleged that Defendant is a private entity that owns, leases, or operates a place of public accommodation.  Plaintiff alleges that Defendant is a California corporation that owns the Restaurant, which is a place of public accommodation.  Compl. ¶¶ 2–3, 9; *see also* 42 U.S.C. § 12181(7)(B) (listing "a restaurant, bar, or other establishment serving food or drink" as a place of public accommodation).

Third, Plaintiff has adequately alleged that he was denied public accommodations by Defendant because of his disability.  Plaintiff alleges that during his visit to the Restaurant, he personally encountered an access barrier:  the lack of wheelchair-accessible dining surfaces. Compl. ¶¶ 10–12, 15.  The 2010 ADA Accessibility Guidelines (ADAAG) specify that at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with certain knee and toe clearance requirements.  *See* ADAAG §§ 226.1, 902.2; *see also id.* §§ 306.2.1, 306.2.3, 306.3.1, 306.3.3.  Johnson alleges that the outdoor dining surfaces at the restaurant did not have sufficient knee clearance.  Compl. ¶ 12.  Further, while 5 percent of dining surfaces are required to meet the 2010 accessibility standards, Johnson alleges that Defendant failed to provide any wheelchair accessible dining surfaces.  *Id.* ¶¶ 10–11.  Accordingly, Plaintiff adequately alleges that the restaurant violated accessibility standards, and that he was denied access to the dining surfaces because of his disability.

The Ninth Circuit recently adopted a burden-shifting framework to determine who bears the burden of proving that removing an architectural barrier is "readily achievable."  *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038–39 (9th Cir. 2020).  Under this burden-shifting analysis, the plaintiff bears the initial burden of plausibly showing that a proposal for removing a barrier is readily achievable.  If the plaintiff meets his or her initial burden, the defendant bears the

United States District Court
Northern District of California

6

1  ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily

2  achievable.  *See id.*

3       In this action, Plaintiff has met his initial burden of plausibly showing that removal of the

4  identified barrier (the lack of wheelchair-accessible dining surfaces) is readily achievable.  Plaintiff

5  alleges that the identified barrier is "easily removed without much difficulty or expense" and that it

6  is an example of "the types of barriers identified by the Department of Justice as presumably readily

7  achievable to remove."  Compl. ¶ 19.  Indeed, federal regulations provide a non-exclusive list of

8  steps   to   remove   barriers,   including   "[r]earranging   tables   ...   and   other   furniture."

9  28 C.F.R. § 36.304(b)(4).  Further, courts in this district have found allegations similar to those

10 found in the Complaint sufficient to meet the plaintiff's burden at the default judgment stage.  *See

11 e.g.*, *Johnson v. Garlic Farm Truck Ctr. LLC*, No. 20–CV–03871–BLF, 2021 WL 2457154, at *6

12 (N.D. Cal. June 16, 2021); *Johnson v. Cortese*, No. 5:19–CV–02671–EJD, 2020 WL 7495164, at

13 *5 (N.D. Cal. Dec. 21, 2020).

14       Because Plaintiff has met his burden, Defendant has the burden of persuasion that removal

15 of  the  identified  barriers  is  not  readily  achievable  as  an  affirmative  defense.  *Lopez*,

16 974 F.3d at 1038–39.  But Defendant has not responded in this action, much less indicated to this

17 Court why such removal would not be readily achievable.  Thus, Defendant has failed to meet its

18 burden to show that removal of the identified barriers is not readily achievable.

19       In sum, the Court finds that Plaintiff's ADA claim is adequately pled and substantively

20 meritorious in light of Defendant's failure to respond in this action.

21            **2.   Unruh Civil Rights Act, Cal. Civ. Code §§ 51–53**

22       "Any violation of the ADA necessarily constitutes a violation of the Unruh Act."  *M.J.

23 Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)).  Thus, because Plaintiff has

24 sufficiently alleged an ADA claim, he has also alleged the requisite elements for an Unruh Act

25 claim.

26      **C.   Amount of Money at Stake**

27       The fourth *Eitel* factor requires the Court to consider the sum of money at stake relative to

28 the   seriousness   of   a   defendant's   conduct.    *Love   v.   Griffin*,   No.   18–cv–00976–JSC,

2018 WL 4471073, at *5 (N.D. Cal. Aug. 20, 2018).  Here, Plaintiff only seeks $6,762, of which $4,000 is the minimum statutory damages under the Unruh Act.  *See* Mot. at 13–14, 20; Cal. Civ. Code § 52(a).  Further, as outlined below, the Court only approves $2,045 in attorneys' fees and costs, which reduces the total amount of money at stake to $6,045.  Accordingly, this factor weighs in favor of granting default judgment.  *See, e.g., Johnson v. Nuoc Mia Vien Dong 2, LLC*, No. 21–cv–01618–CRB, 2021 WL 3271232, at *4 (N.D. Cal. July 30, 2021) (finding this factor weighs in favor of granting default judgment where plaintiff seeks $6,761).

**D.    Possibility of a Dispute Concerning Material Facts; Whether Defendant's Default was Due to Excusable Neglect**

Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether Defendant's failure to respond was the result of excusable neglect.  *Griffin*, 2018 WL 4471073, at *5.  Because Plaintiff plausibly pleads violations of the ADA and the Unruh Act, all liability-related allegations are deemed true.  Further, Defendant has not contested Plaintiff's allegations.  Therefore, there is nothing before the Court that would indicate a possibility of a dispute as to material facts.  Moreover, there is no indication that Defendant's default was due to excusable neglect.  Defendant has never appeared in this case, suggesting that it has chosen not to present a defense in this matter.  Accordingly, these factors weigh in favor of granting default judgment.

**E.    Strong Policy Favoring Decisions on the Merits**

While the Court prefers to decide matters on the merits, Defendant's failure to participate in this litigation makes that impossible.  *See Ridola*, 2018 WL 2287668, at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate.").  Default judgment, therefore, is Plaintiff's only recourse.  *See United States v. Roof Guard Roofing Co.*, No. 17–cv–02592–NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").  As such, the seventh *Eitel* factor weighs in favor of granting default judgment.

### F.     Conclusion

After considering all seven *Eitel* factors and the circumstances of this case, the Court finds that default judgment is warranted and GRANTS Plaintiff's motion for default judgment against Defendant.

## V.     REQUESTED RELIEF

Because this Court concludes that default judgment is warranted, it now considers Plaintiff's request for injunctive relief, statutory damages under the Unruh Act, and attorneys' fees and costs.

### A.     Injunctive relief

Plaintiff requests an order directing Defendant to bring the Restaurant's dining surfaces into compliance with the ADA and Unruh Act.  *See* Compl. at 7.  "A plaintiff need not satisfy '[t]he standard requirements for equitable relief ... when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'"  *Griffin*, 2018 WL 4471073, at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)).  Under the ADA, aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'"  *M.J. Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)).  Injunctive relief is also available under the Unruh Act.  *See* Cal. Civ. Code § 52(c). Injunctive relief is proper where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668, at *13 (internal citation omitted).  As discussed above, Plaintiff has adequately alleged that the Restaurant's dining surfaces violate the ADA and that the removal of the barrier is readily achievable.

Accordingly, the Court grants Plaintiff's request for injunctive relief to bring the Restaurant's dining surfaces in line with ADA requirements.

### B.     Statutory damages

Plaintiff seeks $4,000 in statutory damages for the Restaurant's violation of the Unruh Act. Mot. at 13.  The Unruh Act provides a minimum statutory damages award of $4,000 for each violation.  *See* Cal. Civ. Code § 52(a).  Plaintiff "need not prove [he] suffered actual damages to

United States District Court
Northern District of California

1    recover the independent statutory damages of $4,000." *M.J. Cable, Inc.*, 481 F.3d at 731.  "Any

2    violation of the ADA necessarily constitutes a violation of the Unruh Act." *Id.* (citing Unruh Act,

3    Cal. Civ. Code § 51(f)).  As discussed above, Plaintiff has sufficiently pled that the dining surfaces

4    at the Restaurant violated the ADA during his visit.  Accordingly, Plaintiff has also adequately pled

5    a violation of the Unruh Act.  The Court, therefore, grants Plaintiff $4,000 in statutory damages.

### C.    Attorneys' fees

7        Plaintiff requests $1,837.00 in attorneys' fees under both the ADA and the Unruh Act.  Mot.

8    at 13–14.  These fees are based on hourly rates of (1) $595 for Mark Potter, (2) $400 for Faythe

9    Gutierrez, (3) $200 for Marcus Handy, and (4) $100 for various legal assistants.  Mot., Ex. 1, Decl.

10   of Russell Handy ("Handy Decl."), ECF No. 14-3 at 3–5.  In support of the fees requested, Plaintiff

11   presents detailed billing entries, expert analysis of fees for ADA-plaintiff attorneys by fee experts

12   Richard Pearl and John O'Connor, and an excerpt from the Real Rate Report for 2020.  *See* Mot. at

13   13–20; Handy Decl.; Mot., Ex. 6, Decl. of Richard M. Pearl ("Pearl Decl."), ECF No. 14-8; Mot.,

14   Ex. 8, Decl. of John D. O'Connor ("O'Connor Decl."), ECF No. 14-10; Mot., Ex. 7, Real Rate

15   Report, ECF No. 14-9.

16       As explained below, the Court is not persuaded that Plaintiff's submitted evidence and

17   authority justifies the requested attorneys' fees.

### 1.   Legal Standard

19       Under the ADA and Unruh Act, courts have discretion to award attorneys' fees to prevailing

20   parties.  *M.J. Cable*, 481 F.3d at 730 (citing 42 U.S.C. § 12205); Cal. Civ. Code § 52 (noting that a

21   court may determine attorneys' fees for Unruh Act violations).

22       Whether calculating attorneys' fees under California or federal law, courts follow "the

23   'lodestar' method, … and the amount of that fee must be determined on the facts of each case[.]"

24   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad*

25   *Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)) (citation omitted).  Under the lodestar

26   method, the most useful starting point "is the number of hours reasonably expended on the litigation

27   multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party

28   seeking an award of fees should submit evidence supporting the hours worked and rates claimed.

1     *Id.*

2        "In determining a reasonable hourly rate, the district court should be guided by the rate

3 prevailing in the community for similar work performed by attorneys of comparable skill,

4 experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir.

5 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community

6 is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997).

7 The fee applicant bears the burden of producing evidence, other than declarations of interested

8 counsel, that the requested rates are in line with those prevailing in the community for similar

9 services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at

10 895 n.11. "The district court's function is to award fees that reflect economic conditions in the

11 district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big

12 step.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008).

13        Further, the district court should exclude hours that were not reasonably expended. *See*

14 *Hensley*, 461 U.S. at 434. "[T]he fee applicant bears the burden of establishing entitlement to an

15 award and documenting the appropriate hours expended[.]" *Id.* at 437.

16          **2. Discussion**

17            **a. Rates**

18              i.   Mark Potter and Faythe Gutierrez

19        Plaintiff requests hourly rates of $595 for Mark Potter and $400 for Faythe Gutierrez. Mr.

20 Potter has 25 years of experience and Ms. Gutierrez has about five years of experience primarily

21 working on disability cases. *See* Handy Decl. ¶¶ 3–4.

22        The relevant community for this action is the Northern District of California. *Barjon*, 132

23 F.3d at 500. For attorneys with approximately 20 or more years of experience, courts in this district

24 have generally approved hourly rates ranging from $350 to $495 in disability cases. *See,*

25 *e.g.*, *Castillo-Antonio v. Lam*, No. 18–cv–04593–EDL, 2019 WL 2642469, at *7 (N.D. Cal. Apr.

26 10, 2019) (approving $350 hourly rate for attorney with over 20 years of experience); *Johnson v.*

27 *Castagnola*, No. 18–cv–00583–SVK, 2019 WL 827640, at *2 (N.D. Cal. Feb. 21, 2019)

28 (same); *Wilson v. Red Robin Int'l, Inc.*, No. 17–cv–00685–BLF, 2018 WL 5982868, at *3 (N.D.

Cal. Nov. 14, 2018) (in ADA case, approving $495 hourly rate for attorney with 24 years of experience in civil rights litigation, including 12 years in disability law).

The Court finds that the rates Plaintiff seeks for Mr. Potter and Ms. Gutierrez exceed the rates granted in this community for similar work performed by attorneys of comparable skill, experience, and reputation. *See Blum*, 465 U.S. at 895 n.11. Mr. Potter has recently been granted an hourly rate of $475 in actions representing Plaintiff. *See Johnson v. Li*, No. 5:19–cv–08075–EJD, 2020 WL 3268580, at **2–4 (N.D. Cal. June 17, 2020) (denying Mr. Potter an hourly rate of $650, instead granting an hourly rate of $475); *Johnson v. Lo*, No. 20–cv–06096–PJH (AGT), 2021 WL 5236552, at *4 (N.D. Cal. Oct. 21, 2021) (same); *Johnson v. Oakwood Ctr. LLC*, No. 19–cv–01582–VKD, 2019 WL 7209040, at *12 (N.D. Cal. Dec. 27, 2019) (same); *see also Johnson v. VN Alliance LLC*, No. 18–CV–01372–BLF, 2019 WL 2515749, at *8 (N.D. Cal. June 18, 2019) (granting Mr. Potter an hourly rate of $425). In view of the range of rates approved for attorneys in similar cases, and further recognizing that "decisions pertaining to the same attorneys in question are particularly salient," the Court awards fees for Mr. Potter at $475 per hour. *See Oakwood Ctr.*, 2019 WL 7209040, at *13 (citing *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). Further, the Court awards Ms. Gutierrez a rate of $250 per hour, since this is consistent with her experience level as an attorney who graduated about five years ago and has litigated disability cases for less than five years. *See* Handy Decl. ¶ 4; *Johnson v. AutoZone, Inc.*, No. 17–CV–02941–PJH, 2019 WL 2288111, at *7 (N.D. Cal. May 29, 2019) (awarding a $250 hourly fee rate for attorneys who graduated law school between five and eight years ago in a similar ADA case involving Plaintiff).

The Court is not persuaded by Plaintiff's cited cases. To support the reasonableness of the hourly rates requested in the Motion, Plaintiff relies on *LinkedIn* and *Magsafe*, two cases he claims are examples of Northern District of California courts awarding hourly rates comparable to what he requests here. *See* Mot. at 15–16 (citing *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) and *In re MagSafe Apple Power Adapter Litig.*, No. 5:091–cv–01911–EJD, 2015 WL 428105, at **11–12 (N.D. Cal. Jan. 30, 2015)). *Linkedin* and *Magsafe*, however, are both class action suits that do not contain any ADA claims. *See Linkedin*, 309 F.R.D. at 580–81;

United States District Court
Northern District of California

1   *Magsafe*, 2015 WL 428105, at *1.   Moreover, the relevant community is only one of the

2   considerations when determining an appropriate hourly rate.   Plaintiff does not indicate that the skill,

3   experience, or reputation of the attorneys in either of those cases is similar to Mr. Potter or Ms.

4   Gutierrez.   Accordingly, the Court is not persuaded that the *In re LinkedIn* and *In re Magsafe* are

5   apposite here.

6         Plaintiff also cites to two decisions in this district that approved a $650 hourly rate for Mr.

7   Potter:  *Love v. Rivendell II, Ltd.* and *Johnson v. Khalsa*.  *See* Mot. at 19 (citing R.  & R., *Love v.*

8   *Rivendell II, Ltd.*, No. 18–cv–03907–EDL (N.D. Cal. Mar. 11, 2019) ("R. & R., *Rivendell II*"),

9   ECF No. 25 and Order Adopting R. & R., *Johnson v. Khalsa*, No. 4:19–cv–02725–SBA (N.D. Cal.

10   Apr. 8, 2020), ECF No. 26); *see also* Order Adopting R. & R., *Love v. Rivendell II, Ltd.*, No. 18–

11   cv–03907–JST (N.D. Cal. Apr. 18, 2019), ECF No. 30; R. & R., *Johnson v. Khalsa*, No. 4:19–cv–

12   02725–SBA (N.D. Cal. Mar. 24, 2020) ("R. & R., *Khalsa*"), ECF No. 25.  In both *Rivendell II* and

13   *Khalsa*, Plaintiff asked for fees as part of a motion for default judgment.  *See* R. & R., *Khalsa*;

14   R. & R., *Rivendell II*.  As other courts in this district recently observed, the *Rivendell II* decision

15   relied on cases, such as *Civil Rights Education* and *Rodriguez*, that concerned work that was

16   substantially different than the work performed in the present action.  *See* R. & R., *Rivendell II* at

17   10 (citing *Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15–cv–

18   00216–DMR, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) and *Rodriguez v. Barrita*, 53 F.

19   Supp. 3d 1268, 1278–79 (N.D. Cal. 2014)); *Oakwood Ctr.*, 2019 WL 7209040, at *11 (granting

20   default judgment in ADA case but distinguishing case from *Civil Rights Education* and *Rodriguez*);

21   *AutoZone*, 2019 WL 2288111, at *6 n.4 (same).  Indeed, *Civil Rights Education* involved a complex

22   class action pertaining to 54 hotels spread among multiple states.  *See Civil Rights Educ.*, 2016 WL

23   1177950, at *1.  Further, *Rodriguez* involved an ADA claim that included trial and post-trial

24   attorneys' fees.  *See Rodriguez*, 53 F. Supp. 3d at 1277.  And the *Khalsa* decision did not cite any

25   case law in support of the award of attorneys' fees.  *See* R. & R., *Khalsa*, at 6.  Therefore, the Court

26   is not persuaded that the rates awarded in *Rivendell II* or *Khalsa* are appropriate in this case.

27         Plaintiff also relies on declarations by fee experts Richard Pearl and John O'Connor and an

28   excerpt from the Real Rate Report for Q2 2020 in support of his requested hourly rates.  *See*

United States District Court
Northern District of California

1   O'Connor Decl.; Pearl Decl.; Mot., Ex. 7, Real Rate Report, ECF No. 14-9.   In Mr. Pearl's

2   declaration, he provides a survey of ADA cases that shows that attorneys with 20 to 25 years of

3   experience had court-approved rates of between $500 and $675 per hour in 2009 and 2010, while

4   attorneys with five years of experience or less had court-approved rates ranging between $250 and

5   $435 per hour.  Pearl Decl. at 4-7.  However, Mr. Pearl's declaration fails to consider the nature of

6   work done or the skill or reputation of the attorneys.  Further, the excerpt from the Real Rate Report

7   does not include rates for attorneys located anywhere within the Northern District.  *See generally*

8   Mot., Ex. 7, Real Rate Report, ECF No. 14-9.  As such, the Court is not persuaded that Mr. Pearl's

9   declaration or the excerpt from the Real Rate Report provide a more salient assessment of rates than

10   those previously granted to Plaintiff's attorneys.

11   In addition, Mr. O'Connor states in his declaration that reasonable partner fee rates in ADA

12   cases range from $450 to $750 per hour, while an appropriate range for associates is between $350

13   and $550 per hour.  *See* O'Connor Decl. ¶ 33.  The rates that the Court has awarded to Mr. Potter

14   ($475) and Ms. Gutierrez ($250) in this case are near the lower end of these ranges, and Plaintiff

15   has not adequately justified the high ends of the stated ranges.  "[W]hen a matter 'is a relatively

16   simple one, involving straight-forward application of the law, and which does not present novel or

17   difficult issues requiring a high level of skill or specialization,' courts have generally found that

18   higher rates are unwarranted."  *See Johnson v. Baglietto*, No. 19–CV–06206–TSH,

19   2020 WL 3065939, at *11 (N.D. Cal. May 21, 2020) (citing *Oakwood Ctr.*, 2019 WL 7209040, at

20   *13), *report and recommendation adopted*, No. 19–CV–06206–HSG, 2020 WL 3060902 (N.D. Cal.

21   June 9, 2020).  And "[t]he sheer number of ADA cases that [Plaintiff's] counsel is litigating

22   simultaneously underscores the straightforward nature of their cases."  *Id.* (noting that Plaintiff's

23   counsel "stated that as of November 7, 2019, [counsel's firm], consisting of 20 lawyers, was

24   simultaneously litigating 'over a thousand' ADA cases in the Northern District of California and

25   approximately 1,500 ADA cases in the Central District of California.  The law firm had previously

26   litigated approximately 2,500 ADA cases in the Eastern District of California.") (internal citations

27   omitted).

28   Accordingly, the Court is not persuaded based on the submitted evidence and authority that

United States District Court
Northern District of California

14

1   the hourly rates Plaintiff requests for Mr. Potter and Ms. Gutierrez are appropriate.  The Court

2   approves an hourly rate of $475 per hour for Mr. Potter and $250 per hour for Ms. Gutierrez.

3                            ii.    Marcus Handy and Legal Assistants

4         Plaintiff has also requested reimbursement of fees for legal assistants at an hourly rate of

5   $100 and for Marcus Handy at an hourly rate of $200 for "his experience as a skilled legal assistant

6   and paralegal."  *See* Handy Decl. at 4–5.  Although Plaintiff exclusively cites Central District of

7   California cases in support of the $100 rate, the Court agrees with other courts in this district that

8   an hourly rate of $100 is reasonable for paralegal and legal assistant fees.  *See Lopez v. San*

9   *Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 992 (N.D. Cal. 2005); *Nuoc Mia Vien Dong 2*,

10  2021 WL 3271232, at *6; *Whitaker v. Joe's Jeans Inc.*, No. 21–cv–00597–CRB, 2021 WL 2590155,

11  at *5 (N.D. Cal. June 24, 2021).  Plaintiff does not argue in support of the requested rate of $200 for

12  Marcus Handy in the Motion.  Apart from information regarding Marcus Handy's background found

13  in the Handy Declaration, no justification is provided for the $200 rate.  *See* Handy Decl. at 5.

14  Because Plaintiff has failed to meet his burden regarding the requested rate of $200 for Marcus

15  Handy, the Court finds a rate of $100 reasonable for all legal assistant fees, including Marcus

16  Handy's.

17                                    **b.  Hours**

18        Plaintiff requests fees based on 6.1 hours of work.  *See* Handy Decl. at 7–8.  Courts in this

19  district have found a similar number hours reasonable for similar cases.  *See, e.g.*, *Love v. Mustafa*,

20  No. 20–cv–02071–PJH (AGT), 2021 WL 2905427, at *3 (N.D. Cal. June 11, 2021), *report and*

21  *recommendation adopted*, No. 20–CV–02071–PJH, 2021 WL 2895957 (N.D. Cal. July 9, 2021)

22  (finding 6.51 hours to be reasonable in ADA case); *Nuoc Mia Vien Dong 2*, 2021 WL 3271232, at

23  *6 (finding 6.5 hours to be reasonable in ADA case).  Plaintiff's billing summary shows 6.1 hours

24  were expended in this litigation:  Mr. Potter expended 0.6 hours, Ms. Gutierrez expended 2.5 hours,

25  and legal assistants Andrew Sheaffer, Geraldine Manalo, Marcus Handy, Pie Callueng, and Tanpreet

26  Pannu expended 3 hours.  *See* Handy Decl. at 7–8.  The Court has reviewed the itemized statement

27  of Plaintiff's counsel's legal work and finds no issue with the amount of time or activities that

28  Plaintiff's counsel has conducted.  *Id*.  Accordingly, the Court finds that 6.1 hours of work is

1    reasonable here.

2              **3.  Conclusion**

3         In sum, the Court finds the adjusted hourly rates of $475 for Mark Potter, $250 for Faythe

4    Gutierrez, and $100 for legal assistants including Marcus Handy reasonable for the 6.1 hours

5    expended to be reasonable.   Plaintiff does not request a multiplier for the lodestar amount.

6    Multiplying the reasonable hourly rates by the hours reasonably expended yields a lodestar amount

7    of $1,210 in attorneys' fees, as shown below:

8

| Attorney/Paralegal | Total Time (hours) | Hourly Rate | Amount |
|---|---|---|---|
| Mark Potter | 0.6 | $475 | $285 |
| Faythe Gutierrez | 2.5 | $250 | $625 |
| Andrew Sheaffer | 0.5 | $100 | $50 |
| Geraldine Manalo | 0.3 | $100 | $30 |
| Pie Callueng | 0.3 | $100 | $30 |
| Marcus Handy | 1.8 | $100 | $180 |
| Tanpreet Pannu | 0.1 | $100 | $10 |
| **Total** | **6.1** | | **$1,210** |

17         **D.    Costs**

18        In addition, Plaintiff seeks $835 in costs.  *See* Mot. at 20; Handy Decl. at 8–9.  This includes

19    service costs ($35), filing fees ($400), and investigation costs ($400).  *See* Mot. at 20; Handy Decl.

20    at 8–9.  The ADA provides that the prevailing party may recover "litigation expenses[] and costs."

21    42 U.S.C. § 12205; *see VN Alliance*, 2019 WL 2515749, at **8–9 (including investigation costs in

22    litigation expenses).  Accordingly, the Court grants Plaintiff's request for $835 in costs.

23    **VI.    ORDER**

24        For the foregoing reasons, IT IS ORDERED THAT:

25             1.   Plaintiff's Motion for Default Judgment is GRANTED;

26             2.   Plaintiff is awarded statutory damages in the amount of $4,000;

27             3.   Plaintiff is awarded $2,045 in attorneys' fees and costs; and

28             4.   Plaintiff is granted an injunction requiring Defendants to bring their dining surfaces

United States District Court
Northern District of California

into compliance with the 2010 ADAAG Standards no later than six months after service of this injunction.

Plaintiff shall submit a revised proposed judgment and injunction that is consistent with this order within 7 days.

**IT IS SO ORDERED.**

Dated: December 14, 2021

BETH LABSON FREEMAN
United States District Judge